1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                         **CENTRAL DISTRICT OF CALIFORNIA**

10

11   MICHAEL IVAN STOBAUGH,                    No. CV 13-02409 SS

12                    Plaintiff,

13        v.                                   **MEMORANDUM DECISION AND ORDER**

14   CAROLYN W. COLVIN,
     Acting Commissioner of the
15   Social Security Administration,

16                    Defendant.

17

18                                    **I.**

19                              **INTRODUCTION**

20

21        Plaintiff Michael Ivan Stobaugh ("Plaintiff") seeks review

22   of the final decision of the Commissioner of the Social Security

23   Administration (the "Commissioner" or the "Agency") denying him a

24   Disability Insurance Benefits and Supplemental Security Income.

25   The parties consented, pursuant to 28 U.S.C. § 636(c), to the

26   jurisdiction of the undersigned United States Magistrate Judge.

27   //

28

For the reasons stated below, the decision of the Commissioner is REVERSED AND REMANDED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on May 19, 2011. (Administrative Record ("AR") 22). In both applications, Plaintiff alleged a disability onset date of June 10, 2009. (Id.). The Agency denied Plaintiff's applications on September 8, 2011. (Id.). On September 27, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id.). Plaintiff appeared and testified at a hearing held before ALJ Stuart Waxman on June 18, 2012. (AR 22, 35). June C. Hagen, a vocational expert, also testified at the hearing. (AR 22). On June 29, 2012, the ALJ issued a decision denying Plaintiff DIB and SSI. (AR 30).

Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on February 15, 2013. (AR 1-6). Plaintiff filed the instant action on April 9, 2013.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on October 15, 1974. (AR 28). He was thirty-seven years old at the time of his hearing before the ALJ,

1   which is defined as a younger individual. (Id.). Plaintiff

2   completed high school and speaks English. (Id.). Plaintiff

3   testified that he has a Bachelor's Degree in English Literature.

4   (AR 40). Plaintiff's past work experience includes work as an

5   alarm operator, a user support analyst and a customer service

6   representative. (AR 28, 41-44). Plaintiff claims he is unable

7   to work due to bipolar disorder, seizures disorder and attention

8   deficit disorder. (AR 44-45). Plaintiff is prescribed three

9   different medications. (AR 260). Plaintiff is taking Lamictal

10  for bipolar disorder, Strattera for attention deficit disorder,

11  and Pristiq for depression. (AR 46-47). Plaintiff has a long

12  history of substance abuse. However, he asserts that stopped

13  abusing drugs and alcohol several years ago, and the ALJ found

14  that there was no evidence to the contrary. (AR 25).

15

16  **A.   Relevant Medical History**

17

18      **1.   Plaintiff's Treating Physician**

19

20      Dr. Blinder was Plaintiff's treating doctor. (AR 25).

21  Plaintiff has been visiting Dr. Blinder since September 6, 2008.

22  (AR 260). Dr. Blinder provided treatment to Plaintiff one to two

23  sessions per month for a total of forty-nine visits. (Id.). Dr.

24  Blinder noted that Plaintiff has a schizoaffective disorder.

25  (Id.). The signs and symptoms identified by Dr. Blinder include

26  anhedonia, decreased energy, generalized persistent anxiety,

27  difficulty thinking or concentrating, psychomotor agitation or

28  retardation, psychological or behavior abnormalities associated

3

1    with the dysfunction of the brain, easy distractibility and loss
2    of intellectual ability of 15 IQ points or more.  (AR 261).  Dr.
3    Blinder noted that Plaintiff is limited but satisfactory in the
4    mental abilities and aptitudes needed to perform unskilled work.
5    (AR 262).  Dr. Blinder also found that Plaintiff is seriously
6    limited in the following activities: (1) maintaining attention
7    for a two-hour segment, (2) performing at a consistent pace
8    without an unreasonable number and length of rest periods, (3)
9    responding appropriately to changes in a routine work setting,
10   and (4)dealing with normal work stress.  (Id.).

11

12   **B.   Examining Doctor's Opinion**

13

14        Dr. Franklin, an assistant clinical professor at the
15   University of California, Irvine School of Medicine, conducted a
16   clinical interview with Plaintiff on May 12, 2009.  (AR 253).
17   After the interview, on June 9, 2009, Dr. Franklin examined
18   Plaintiff for a neuropsychiatric evaluation.  (Id.).  As part of
19   the evaluation, Dr. Franklin performed number of assessments and
20   procedures.  (AR 255).  Dr. Franklin diagnosed Plaintiff with
21   schizophrenia with a depressive disorder, not otherwise
22   specified.  (AR 259).  Dr. Franklin noted that while Plaintiff's
23   speech and efforts during the exam were good, his motor and
24   information processing was slow.  (AR 255).  Based on the
25   neuropsychological evaluation, Plaintiff "has a significant
26   difficulty with processing speed and reaction time."  (AR 258).
27   Dr. Franklin also noted that it would take Plaintiff longer than
28   his peers to finish assignments due to difficulties in attention

and concentration. (Id.). However, Plaintiff's executive functioning skills are normal. (Id.). The achievement tests performed by Dr. Franklin show that Plaintiff scored low average in the following categories: processing speed, short delay free recall, long delay free recall and delayed recognition. (AR 256). Plaintiff has a history of substance abuse but has been sober for the past fifteen years. (AR 253, 259). Dr. Franklin also noted that despite not using illegal substances, Plaintiff continues having auditory hallucinations one or two times per week. (AR 259). Additionally, Dr. Franklin states that Plaintiff suffers from mild depressive symptoms. (Id.).

**C.   Additional Examinations**

    **1.   Dr. Ella-Tamayo**

Dr. Ella-Tamayo was retained by the Social Security Administration to perform a complete internal medicine evaluation of Plaintiff. (AR 276). Dr. Ella-Tamayo noted that Plaintiff can pick up about fifty pounds and "walks a lot without problem." (AR 277). Dr. Ella-Tamayo also noted that Plaintiff had a history of seizure disorder but has been seizure-free for thirteen years. (AR 280). Furthermore, Dr. Ella-Tamayo found no significant functional impairment. (Id.).

1

     **2.   Dr. Goldsmith**

2

3      Dr. Goldsmith was retained by the Social Security
4  Administration to perform a complete psychiatric evaluation of
5  Plaintiff and provide a report. (AR 283). Dr. Goldsmith
6  described Plaintiff's mood as "blunted" and his affective status
7  as "dysphoric and anxious." (AR 285). Dr. Goldsmith noted that
8  "[t]here is no evidence of thought blocking, loose associations,
9  or tangentiality." (Id.). However, Dr. Goldsmith also stated
10  that Plaintiff "would have difficulty functioning in the
11  workplace." (AR 286). Dr. Goldsmith diagnosed Plaintiff with
12  schizoaffective disorder by history, in fair remission. (Id.).

13

14     **3.   Dr. Kelly**

15

16      Dr. Kelly was a State Agency Psychologist, who evaluated the
17  medical records provided by Plaintiff. (AR 26, 303). Dr. Kelly
18  assessed Plaintiff's Mental Residual Functional Capacity and
19  concluded that Plaintiff is moderately limited in his ability to
20  carry out detailed instructions, maintain attention and
21  concentration for extended periods, sustain an ordinary routine
22  without special supervision, complete a normal workday and
23  workweek without interruptions from psychologically based
24  symptoms and to perform at a consistent pace without an
25  unreasonable number and length of rest periods, accept
26  instructions and respond appropriately to criticism from
27  supervisors, respond appropriately to changes in the work setting
28  and set realistic goals or make plans independently of others.

(AR 305).  After reviewing the information, Dr. Kelly stated that "the overall MER supports an unskilled rating."  (AR 306).  Dr. Kelly also stated that despite some problems, Plaintiff can engage in "SRRT in consistent, predictable fashion."  (Id.).

**D.   Vocational Expert Testimony**

Vocational Expert ("VE"), June Hagen, testified at Plaintiff's hearing.  (AR 58).  The VE stated that given an individual of the same age, education and work experience as the Plaintiff, he would be able to perform work as a laborer, packager and a cleaner if he had to take five percent of the day in addition to the regularly scheduled breaks off.  (AR 59-60). In another hypothetical posed to the VE based on Dr. Kelly's RFC, it was assumed that Plaintiff had "[m]oderate limitations in carrying out detailed instructions, maintaining attention and concentration for extended periods, sustaining ordinary, routine, without special supervision, completing a normal work day or week without interruption from psychological symptoms, and perform at a consistent pace, accepting instructions and responding in an appropriate manner to criticism from supervisors, responding appropriately to changes in the work setting, and also setting realistic goals or making plans independent of others."  (AR 62). Based on this hypothetical, the VE concluded that Plaintiff will most likely not be able to get any job.  (AR 63).  The VE also stated that if Plaintiff was seriously limited but not precluded in the areas of maintaining attention for a two-hour segment, performing at a consistent pace without an unreasonable number

1    and length of rest periods, responding appropriately to changes

2    in a routine work setting, and also dealing with normal work

3    stress, Plaintiff will not be able to obtain any job.  (AR 63-

4    64).  This hypothetical was based on Dr. Blinder's RFC.  (AR 63).

5

6    **E.    The Third Party Function Report Of Plaintiff's Stepfather**

7

8         On July 8, 2011, Plaintiff's stepfather, Edward Hart,

9    completed a Third Party Function Report ("TPF Report") regarding

10   how Plaintiff's alleged disability limited his activities.  (AR

11   181).   Mr.  Hart  has  known  Plaintiff  for  twenty-three

12   years.  (Id.).   According to Mr. Hart, Plaintiff has trouble

13   sleeping but it has improved.  (AR 183).  While Mr. Hart states

14   that Michael is capable of doing simple household chores, he also

15   mentions that "[h]e needs, or benefits from, supervision."  (AR

16   184).  Plaintiff needs a reminder to start doing the chores but

17   once he starts, he completes the chores at a "normal pace."  (AR

18   185).  Per Mr. Hart, Plaintiff "had a better understanding of

19   money, personal finance, and just about everything else before."

20   (AR 186).  Also, before the alleged disability, Plaintiff was

21   "very active."  (Id.).  Now, Plaintiff often needs reminders and

22   detailed instructions as to what to do, and he only does things

23   that are "necessary."  (AR 186, 188).  Mr. Hart also stated that

24   while Plaintiff can watch a movie or a TV show without losing

25   concentration, he might not be able to pay attention to TV News.

26   (AR 188).  Plaintiff also has difficulties with handling stress.

27   (AR 189).

28

**F.   Statement Of Plaintiff's Sister Anne Stobaugh**

On February 12, 2013, Plaintiff's sister, Anne Stobaugh, wrote a letter describing how her twin brother's disability has impacted his life. (AR 224). Ms. Stobaugh mentions that Plaintiff has trouble concentrating over a long period of time. (Id.). Ms. Stobaugh states that Plaintiff's previous employer called and notified her that Plaintiff's behavior was changing, and he was starting to make more and more mistakes. (Id.). Ms. Stobaugh also explains that she reminds Plaintiff to take a shower daily every time she sees him since he "has offensive body odor." (Id.). Moreover, Plaintiff fails to make eye contact most of the time. (Id.).

**G.   Plaintiff's Testimony**

Plaintiff testified that he suffers from depression and insomnia and has been diagnosed with bipolar disorder, seizures and attention deficit disorder. (AR 44-45). Plaintiff stated that he gets six to eight hours of sleep per night but has trouble falling asleep. (AR 48). Plaintiff stated, "I, kind of, have to wait until I'm ready to sleep rather than just say this is a good time to sleep." (AR 53). Plaintiff testified that despite taking the prescribed medications, he still experiences symptoms of schizophreniform or depression. (AR 52). Plaintiff is able to take care of his personal needs such as making his own meals. (AR 50). However, Plaintiff also testified he has trouble keeping his room clean. (AR 54). Plaintiff needs

9

motivation to take a shower. (AR 55). Plaintiff stated, "I do try to keep myself from getting just really, really bad. It seems like it's a lot of energy." (Id.). Plaintiff manages to do laundry once a month. (AR 56). Plaintiff also mentioned that he can only watch TV for about five or ten minutes without getting distracted. (AR 56-57).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found

10

1          not disabled.  If not, proceed to step two.

2    (2)   Is the claimant's impairment severe?  If not, the

3          claimant is found not disabled.  If so, proceed to

4          step three.

5    (3)   Does the claimant's impairment meet or equal one

6          of the specific impairments described in 20 C.F.R.

7          Part 404, Subpart P, Appendix 1?  If so, the

8          claimant is found disabled.  If not, proceed to

9          step four.

10   (4)   Is the claimant capable of performing his past

11         work?  If so, the claimant is found not disabled.

12         If not, proceed to step five.

13   (5)   Is the claimant able to do any other work?  If

14         not, the claimant is found disabled.  If so, the

15         claimant is found not disabled.

16

17   Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,

18   262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20

19   C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

20

21        The claimant has the burden of proof at steps one through

22   four, and the Commissioner has the burden of proof at step five.

23   Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an

24   affirmative duty to assist the claimant in developing the record

25   at every step of the inquiry.  (Id. at 954).  If, at step four,

26   the claimant meets her burden of establishing an inability to

27   perform past work, the Commissioner must show that the claimant

28   can perform some other work that exists in "significant numbers"

11

in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 30). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of June 10, 2009. (AR 24). At step two, the ALJ found that Plaintiff had the severe impairments of schizophrenia and a depressive disorder, not otherwise specified. (AR 24). In assessing Plaintiff's impairment, the ALJ adopted the assessment of the examining doctor, Dr. Franklin, which states that Plaintiff suffers from schizophrenia with a depressive disorder. (AR 25). ALJ did not

12

adopt Plaintiff's treating physician's assessment that he suffered from schizoaffective disorder diagnosis. (Id.). Dr. Franklin's assessment was adopted due to his greater credentials and thoroughness of his assessment. (Id.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

Next, at step four, the ALJ found that Plaintiff could not perform his past relevant work. (AR 28). The ALJ also found that "the claimant has the residual capacity to perform work at all exertional levels. However, mentally, the claimant is limited to simple routine repetitive work with simple work related decisions and routine workplace changes. The claimant should have no public contact, only occasional interaction with coworkers, and only occasional supervision. Further, due to his symptoms he would be off task 5% of the time beyond regular scheduled breaks. The claimant has no other significant limitations." (AR 25). Based on these findings, the ALJ stated that Plaintiff can perform other jobs in the national economy such as stores laborer, hand packager and housekeeping cleaner. (AR 29). Accordingly, the ALJ determined that Plaintiff is not disabled. (Id.).

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.) (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

14

**VII.**

**DISCUSSION**

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff contends that the ALJ erred by improperly rejecting the medical evidence from the treating physician. (Memorandum in Support of Plaintiff's Complaint ("MSPC") at 2-3). Second, Plaintiff claims, the ALJ rejected Plaintiff's testimony without providing legally sufficient reasons. (Id. at 2, 10). The Court agrees with Plaintiff's contentions.

**A.   The ALJ Failed To Provide Specific And Legitimate Reasons To Reject The Treating Physician's Opinions And Failed To Recognize That The Consultative Physician's Opinions Were Consistent With The Treating Physician's Opinions**

The opinions of a treating physician are entitled to greater weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons." Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). However, if the treating physician's opinion is contradicted, the opinion may be rejected for "specific and legitimate reasons supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830 (9th Cir., as amended Apr. 9, 1996) (citation omitted).

15

1      Here, the ALJ rejected the opinion of treating physician,
2  Dr. Blinder, but failed to provide specific and legitimate
3  reasons for rejecting Dr. Blinder's opinion. (AR 25). On the
4  Mental Residual Functional Capacity Questionnaire, Dr. Blinder
5  noted that Plaintiff is limited but satisfactory in the mental
6  abilities and aptitudes needed to do unskilled work. (AR 262).
7  Additionally, Plaintiff is seriously limited in maintaining
8  attention for a two hour segment, performing at a consistent pace
9  without an unreasonable number and length of rest periods,
10  responding appropriately to changes in a routine work setting,
11  and dealing with normal work stress. (Id.). The symptoms
12  identified by Dr. Blinder include anhedonia, decreased energy,
13  generalized persistent anxiety, difficulty thinking or
14  concentrating, psychomotor agitation or retardation,
15  psychological or behavior abnormalities associated with the
16  dysfunction of the brain, easy distractibility and loss of
17  intellectual ability of 15 IQ points or more. (AR 261). Dr.
18  Blinder diagnosed Plaintiff with schizoaffective disorder. (AR
19  25).

20

21      The ALJ adopted the assessment of Dr. Franklin, a
22  psychologist, "because of his greater credentials and because of
23  the thoroughness of his psychology assessment, which included not
24  only a psychiatric interview and a mental status examination, but
25  a battery of psychometric tests." (Id.).
26  However, this is not a legitimate ground because there is no
27  showing that Dr. Blinder's evaluation of Plaintiff, made over
28  several years and including forty-nine visits, was less thorough

or valid, than Dr. Franklin's. As the psychiatrist who treated Plaintiff over a long period of time, Dr. Blinder was especially qualified to determine Plaintiff's mental functional capacity and limitations. See Lester, 81 F.3d at 833 ("the treating physician's continuing relationship with the claimant makes him especially qualified . . . to form an overall conclusion as to functional capacities and limitations. . ."). Moreover, the grounds for rejecting the treating doctor's opinions, i.e., that Dr. Franklin had "greater credentials," also do not appear to be supported by the record. Dr. Blinder, Plaintiff's treating psychiatrist, is a Diplomat of the American Board of Psychiatry and Neurology, a Fellow of the American Psychiatric Association and a Fellow of the American Academy of Child and Adolescent Psychiatry. (AR 311). Dr. Blinder is also a Clinical Professor in the Department of Psychiatry, College of Medicine, University of California, Irvine, and holds a PhD as well. (AR 312). Given Dr. Blinder's credentials and treating relationship with Plaintiff, the ALJ's ground for rejecting Dr. Blinder's opinion, i.e., that his qualifications or examinations were inferior to Dr. Franklin's, is not a legitimate ground.

In addition, it appears that Dr. Blinder and Dr. Franklin actually made somewhat consistent findings. Dr. Franklin stated that based on the neuropsychological evaluation, Plaintiff "has a significant difficulty with processing speed and reaction time." (AR 258). Dr. Franklin noted that "this would impact his efficiency at work in which it would take him longer to finish each task." (Id.). The achievement tests performed by Dr.

17

1  Franklin show that Plaintiff scored low average in the following
2  categories: processing speed, short delay free recall, long delay
3  free recall and delayed recognition. (AR 256). Additionally,
4  Plaintiff's learning scope was found to be impaired. (Id.). Dr.
5  Franklin diagnosed Plaintiff with schizophrenia with a depressive
6  disorder, not otherwise specified. (AR 259). Overall, Dr.
7  Franklin's findings are consistent with Dr. Blinder's findings
8  and do not support the ALJ's ultimate RFC.

9

10     Furthermore, Dr. Goldsmith, a doctor retained by the Social
11  Security Administration, performed a complete psychiatric
12  evaluation of Plaintiff which was also consistent with Dr.
13  Blinder's results. (AR 283). Dr. Goldsmith stated that
14  Plaintiff's mood was blunted, dysphoric and anxious. (AR 286).
15  This corresponds with Dr. Franklin's observations. Dr. Franklin
16  had also noted that Plaintiff's mood was dysphoric. (AR 255).
17  Dr. Goldsmith also found that Plaintiff "would have difficulty
18  functioning in the workplace." (AR 286). Dr. Kelly, a state
19  agency physician, conducted a Mental Residual Functional Capacity
20  Assessment and found that Plaintiff is "moderately limited" in
21  his ability to carry out detailed instructions, maintain
22  attention and concentration for extended periods, sustain an
23  ordinary routine without special supervision, complete a normal
24  workday and workweek without interruptions from psychologically
25  based symptoms and to perform at a consistent pace without an
26  unreasonable number and length of rest periods, accept
27  instructions and respond appropriately to criticism from
28  supervisors, respond appropriately to changes in the work setting

and set realistic goals or make plans independently of others. (AR 305). Dr. Goldsmith's findings are consistent with the limitations suggested by Dr. Blinder.

During the administrative hearing, the ALJ presented to the VE the following hypothetical:

> Consider an individual of the same age, education and work experience as the claimant. This individual could perform simple, routine, repetitive work involving only simple work-related decisions and routine work place changes. He would have no direct interaction with the public and only occasional interaction with co-workers. He would be permitted to be off task 5 percent of the day in addition to regularly scheduled breaks.

(AR 59-60). The VE concluded that in this scenario Plaintiff would not be able to perform his past work but he would be able to perform other jobs. (AR 60). The VE reached a different conclusion when presented with a hypothetical based on the RFC incorporating Dr. Blinder's limitations. (AR 63-64). The VE testified that such an individual will be precluded from performing any work. (AR 64). The VE reached the same conclusion when presented with a hypothetical based on the RFC incorporating Dr. Kelly's limitations. (AR 62-63). The reports of Dr. Blinder, Dr. Franklin, Dr. Goldsmith and Dr. Kelly all illustrate that Plaintiff would have difficulty performing tasks at work. Dr. Blinder stated that Plaintiff is seriously limited

1   in responding appropriately to changes in a routine work setting,

2   and dealing with normal work stress. (AR 262). Dr. Franklin,

3   whose assessment ALJ adopted, stated that Plaintiff's efficiency

4   at work will be impacted because "it would take him longer to

5   finish each task." (AR 258). Similarly, Dr. Goldsmith declared

6   that Plaintiff "would have difficulty functioning in the

7   workplace." (AR 286). Also, Dr. Kelly reported that Plaintiff

8   is moderately limited in his ability to sustain an ordinary

9   routine without special supervision, complete a normal workday

10  and workweek without interruptions from psychologically based

11  symptoms, accept instructions and respond appropriately to

12  criticism from supervisors, and respond appropriately to changes

13  in the work setting. (AR 305).

14

15       "To say that medical opinions are not supported by

16  sufficient objective findings or are contrary to the preponderant

17  conclusions mandated by the objective findings does not achieve

18  the level of specificity our prior cases have required." Embrey

19  v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). Here, although the

20  ALJ stated he was adopting Dr. Franklin's opinion over Dr.

21  Blinder's, due to the Dr. Franklin's superior credentials and

22  testing, the ALJ failed to recognize that the two opinions were

23  not in conflict. Moreover, this was not a legitimate reason

24  because the ALJ failed to give proper weight to Dr. Blinder's

25  qualifications and credentials, nor did the ALJ properly credit

26  Dr. Blinder's lengthy treating relationship with Plaintiff.

27  Accordingly, remand is required for proper consideration of all

28  of the medical evidence. If necessary, the ALJ should seek the

20

assistance of a medical expert to interpret the medical evidence properly.

**B.    The ALJ Failed To Provide Clear And Convincing Reasons For Rejecting Plaintiff's Testimony**

The ALJ may reject a plaintiff's testimony if he or she makes an explicit credibility finding that is "supported by a specific, cogent reason for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (internal citations omitted). Unless there is affirmative evidence showing that the plaintiff is malingering, the ALJ's reasons for rejecting the plaintiff's testimony must be "clear and convincing." Lester, 81 F.3d at 834.  Moreover, the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).  If the ALJ finds that claimant's pain testimony not to be credible, the ALJ "must specifically make findings that support this conclusion." Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citation omitted).  If the ALJ only makes vague findings, i.e., the plaintiff's statements are not consistent with the medical evidence, the ALJ has not satisfied his obligation to supply specific, clear, and convincing reasons. Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009).

The ALJ rejected Plaintiff's testimony as incredible due to lack of medical support.  (AR 27).  This is not a clear and

21

convincing reason, as the medical records supplied by Dr. Blinder
offer substantial support for Plaintiff's testimony. In
addition, Plaintiff's sister specified that Plaintiff's previous
employer notified her that Plaintiff's "behavior was
progressively becoming more odd, his attention span shorter, the
others on the team were afraid he would have a mental break down
at work that could potentially become violent; and he was making
mistake after mistake." (AR 224). This statement is further
support for Plaintiff's testimony.

    The ALJ also relied on Plaintiff's daily activities.
However, the Ninth Circuit "has repeatedly asserted that the mere
fact that a plaintiff has carried on certain daily activities,
such as grocery shopping, driving a car, or limited walking for
exercise, does not in any way detract from [the plaintiff's]
credibility as to [the plaintiff's] overall disability."
Vertigan v. Halter, 260 F.3d 1044. 1050 (9th Cir. 2001). Indeed,
a plaintiff does not need to be "utterly incapacitated to be
eligible for benefits." Fair v. Bowen, 885 F.2d 597, 603 (9th
Cir. 1989). The degree of activity described by Plaintiff was
not so extensive that it undermined his testimony regarding his
work limitations. Accordingly, Plaintiff's daily activities were
not a "clear and convincing" reason to reject his testimony.

    Additionally, the ALJ noted that Plaintiff applied for
unemployment benefits. (AR 27-28). While the Ninth Circuit has
recognized that receipt of unemployment benefits can undermine a
claimant's alleged inability to work, it also has observed that

22

only full-time employment "is inconsistent with [claimant's] disability allegations." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). Here, the record does not establish whether Plaintiff held himself out as available for full-time or part time-work. (AR 35-65). In addition, the ALJ failed to question Plaintiff about his unemployment benefits. (Id.). The fact of Plaintiff's application for unemployment benefits by itself is insufficient to satisfy the "clear and convincing" standard for rejecting Plaintiff's testimony. Thus, ALJ failed to provide clear and convincing reasons, supported by the record, to reject Plaintiff's testimony. Remand is required.

## VIII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING AND REMANDING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 28, 2014            _____
                                 /S/
                                 SUZANNE H. SEGAL
                                 UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS, OR ANY OTHER ONLINE DATABASE.**

23